## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| **BLADES OF GREEN, INC.** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| **v.** | * | **Civil Case No.: SAG-22-00176** |
| | * | |
| **GO GREEN LAWN AND PEST, LLC.,** *et al.,* | * | |
| | * | |
| **Defendants.** | * | |
| | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

### MEMORANDUM OPINION

Plaintiff Blades of Green, Inc. ("BOG") filed this action against Go Green Lawn and Pest, LLC, Andrews Lawn and Landscaping LLC, Lawnscapes, Etc., David Drennan, and Tyler Salefski (collectively, "Defendants") seeking redress for alleged misappropriation of its trade secrets, false designation of its goods and services, unfair competition, tortious interference with contract, civil conspiracy, and breach of contract, ECF 1. BOG also filed a Motion for Temporary Restraining Order ("TRO") and Preliminary Injunction, ECF 2, and Motion for Expedited Discovery, ECF 3, which are currently pending before this Court. A telephonic hearing was held on February 1, 2022. For the reasons explained below, BOG's Motion for TRO, ECF 2, and Motion for Expedited Discovery, ECF 3, will be granted in part and denied in part.

## I. FACTUAL BACKGROUND

BOG is a Maryland corporation offering personalized lawn care and pest control to homeowners in Maryland, the District of Columbia, and Virginia, ECF 1 ¶ 9. BOG is "nationally recognized for its innovation in the industry," and has invested significantly in developing cutting-edge organic treatments, which are marketed under the "True Organic" brand. *Id.* ¶¶ 11, 54.

Defendants Go Green Lawn and Pest, LLC, and Andrews Lawn and Landscaping, LLC, are Pennsylvania corporations, which acquired the assets of Lawnscapes, Etc.—a Maryland corporation—in December, 2021 (collectively "Go Green").  *See* ECF 1 ¶¶ 1-4; ECF 15.

Defendant David Drennan worked for BOG for over six years, eventually advancing to the role of Director of Operations, in which capacity he enjoyed access to confidential and proprietary marketing lists, marketing plans, and sales strategies.  ECF 2-2 ¶ 14.  BOG terminated Drennan for cause in February, 2021, at which point he executed a Separation and Confidentiality Agreement ("Separation Agreement") that prohibited in relevant part: (i) the disclosure of BOG's confidential information; (ii) the solicitation of current or future BOG employees for two years; and (iii) the solicitation of current or prospective BOG customers for two years.  ECF 1 ¶¶ 19-20. The Separation Agreement further required that Drennan disclose the restrictive covenants to his new employer if such employer is a competitor of BOG, ECF 2-3 at § 15(F), and stipulated that BOG is entitled to seek immediate injunctive relief in the event of Drennan's breach.  *Id.* at § 15(c). Subsequent to his separation from BOG, "Drennan began working directly or indirectly for Go Green."  ECF 1 ¶ 21.

Tyler Salefski began working for BOG as a Solutions Specialist, an internal sales position, in September, 2017.  *Id.* ¶ 23.  At the time of his hire, Salefski entered the same non-solicitation and confidentiality agreement ("Confidentiality Agreement") that all BOG employees must execute as a condition of their employment.  ECF 2-1 at 4.  The Confidentiality Agreement prohibited in relevant part the disclosure of BOG's confidential information, and the solicitation of its customers or employees during Salefski's employment and for a period of two years thereafter.  ECF 1 ¶ 25-26.  Salefski was terminated by BOG in April, 2021, and subsequently became employed by Go Green.  ECF 2-1 at 6; ECF 2-2 ¶¶ 22-23.

BOG alleges that Go Green, together with Drennan and Salefski, collectively orchestrated a three-pronged campaign to: (1) misappropriate BOG's trade secrets; (2) hire away its employees; and (3) falsely claim its work product.

First, Drennan and Salefski allegedly misappropriated BOG's trade secrets for the benefit of their new employer.  To this end, Drennan and Salefski allegedly disclosed to Go Green the "names, contact information and payment arrangement of [BOG] employees as well as their own compensation arrangement."  ECF 2 at 7-8.  Salefski also allegedly retained BOG's price sheet, which he intended to use as a model for Go Green's pricing structure.  ECF 2-7 ¶ 4.  BOG further alleges that Defendants enlisted several additional current and former BOG employees in their efforts.  Upon request from Drennan in or about March, 2021, Amy Briggs—a BOG employee in charge of subcontracting operations—allegedly sent Drennan copies of BOG's contract templates and spring 2021 marketing plans, including its "Mole/Vole Control Estimate & Agreement."  *Id*. ¶ 36-37; ECF 2-1 at 8.  Moreover, in December, 2021, Pam Green, a BOG sales executive, allegedly forwarded confidential BOG documents from her work email to her personal email.  ECF 1 ¶ 38.  The ultimate destination of these documents is unknown. ECF 2-1 at 8.  Most significantly, in December, 2021, then-BOG employee Riley Grainger-Smith[1] allegedly sent to her personal email several BOG documents, including: "BOG Collections Procedures," "BOG CSR Playbook," "CSR Training Checklist," and "CSR Onboarding Checklist."  ECF 1 ¶ 47-48; ECF 2-2 ¶ 35. Grainger-Smith subsequently resigned and became employed by Go Green.  ECF 1 ¶ 49-50.  BOG has submitted supporting declarations asserting that one of these documents—the unabridged BOG CSR Playbook—contains significant amounts of sensitive, confidential information including

---

[1] The Court will refer to this individual by the name of "Grainger-Smith," as it appears in BOG's Complaint, ECF 1, and memorandum in support of its TRO, ECF 2-1, but acknowledges that she is referred to as "Smith-Grainger" in two BOG exhibits.  *See* ECF 2-2, 2-7.

internal training materials, detailed information on the "True Organic" product lines, and specialized sales techniques. *See* ECF 14. Finally, in January, 2022, Victoria Osgood—a former BOG routing specialist who had been terminated in November, 2021—allegedly forwarded BOG training documents and "budget billing program" documents to Salefski. ECF 2 at 9; ECF 2-2 ¶ 31.

Second, Defendants allegedly began concerted efforts to improperly hire away BOG's workforce. Go Green allegedly directed Drennan and Salefski to solicit BOG's employees, despite Go Green's knowledge that such conduct was in contravention of Drennan's and Salefski's respective contracts. These employees were allegedly solicited by Defendants with the express intent of inducing them to misappropriate confidential information. ECF 1 ¶ 31. Consistent with such conduct, in December, 2021, Telinda Maddox, a former BOG employee, confided in colleagues that she had been solicited for employment by Go Green, and was subsequently terminated. ECF 1 ¶ 41. Before returning her work-issued computer, Maddox allegedly misappropriated BOG documents and deleted the evidence thereof. Maddox is now allegedly employed by Go Green. *Id*. ¶¶ 42-44. Additionally, in or around January, 2022, Go Green extended an offer of employment to Mike Baker, the lead technician of the BOG's True Organic brand. *Id.*¶ 54. Baker allegedly forwarded confidential BOG documents to his personal email address, and subsequently began employment with Go Green. *Id.*¶ 53. Go Green also unsuccessfully attempted to solicit for hire several additional BOG employees, including Sarah Superior, Natalie Rose, Tom Green, Dan Smalt, Tyler Haigis, and James Derrick. *Id*. ¶¶ 59-62.

Third, and finally, Go Green allegedly appropriated BOG's services and work product. BOG contends that it originated the Advanced Termite Protection Program, which it publicizes to customers through its marketing programs and materials. In its marketing materials, Go Green has

allegedly begun advertising its own Advanced Termite Protection Program using—without attribution—the exact language contained in BOG's materials. *See id.* ¶¶ 66-67 (alleging that the parties' public marketing materials both state "[s]ince every home is different, choosing the most effective system for your home is very important.  To that end, we are offering our Advanced Termite Protection Program that provides a preventative and curative termite control program with the use of advanced termite liquid treatment.").  BOG sent Defendants a cease-and-desist letter on January 14, 2022. *Id.* ¶ 69.

Plaintiffs filed their Complaint in this Court on January 24, 2022, alleging misappropriation of trade secrets in violation of federal and state law (Counts I-II); false association and advertising in violation of the Lanham Act against Go Green (Count III); unfair competition (Count IV); tortious interference with contract (Count V); civil conspiracy (Count VI); and breach of contract against Drennan and Salefski (Count VII).  ECF 1.

## II.   MOTION FOR TEMPORARY RESTRAINING ORDER

### A.  LEGAL STANDARDS

A TRO or a preliminary injunction is warranted when the movant demonstrates four factors: (1) that the movant is likely to succeed on the merits, (2) that the movant will likely suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities favors preliminary relief, and (4) that injunctive relief is in the public interest. *League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 236 (4th Cir. 2014) (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)); *Wilson v. Williams*, 2019 WL 4942102, at *1 (D.S.C. Oct. 8, 2019).  The movant must establish all four elements in order to prevail. *Pashby v. Delia*, 709 F.3d 307, 320-21 (4th Cir. 2013).

A TRO, much like a preliminary injunction, affords "'an extraordinary and drastic remedy' prior to trial." *Ultimate Outdoor Movies, LLC v. FunFlicks, LLC*, 2019 WL 2642838, at *6 (D. Md. June 27, 2019) (quoting *Munaf v. Green*, 553 U.S. 674, 689-90 (2008)); *see also MicroStrategy, Inc. v. Motorola, Inc.*, 245 F.3d 335, 339 (4th Cir. 2001) (stating preliminary injunctive relief is an "extraordinary remed[y] involving the exercise of very far-reaching power [that is] to be granted only sparingly and in limited circumstances.") (citation omitted).  Since preliminary injunctions are intended to preserve the status quo during the pendency of litigation, injunctions that "alter rather than preserve the status quo" are particularly disfavored.  *Mountain Valley Pipeline, LLC v. 6.56 Acres of Land*, 915 F.3d 197, 216 n.8 (4th Cir. 2019).  Courts should grant such "mandatory" preliminary injunctions only when "the applicant's right to relief [is] indisputably clear." *Id.*

## B.  REQUESTED RELIEF

In its Motion for TRO, BOG seeks eight forms of injunctive relief.  *See* ECF 2. Specifically, BOG requests that this Court:

a.  immediately enjoin[] and restrain[] Go Green, Drennan, and Salefski, directly or indirectly, and whether alone or in concert with his current employer or others, from

    i.  using, disclosing, transferring or transmitting (for any purpose) any confidential or trade secret information belonging to Plaintiff;

    ii.  using Plaintiff's confidential customer information (such as customer information, financial data, etc.) to target Plaintiff's customers on their own behalf or on behalf of competitors to convince them to move their business;

    iii.  violating the terms of Drennan's Separation Agreement dated February 5, 2021 . . . ;

    iv.  violating the terms of Salefski's Non-Solicitation Agreement dated September 11, 2017 . . .;

    v.  violating the terms of any and all restricted [*sic*] covenants signed by Blades of Green and any other current or prospective Go Green employee;

> vi.   destroying, deleting, erasing, modifying, or otherwise failing to preserve intact any documents . . . or any other evidence regarding or related to Blades of Green claims . . .;
>
> vii.   competing against Blades of Green in the State of Maryland for two (2) years from the date of such order; and

b.   [i]ssue and [*sic*] order requiring that Defendants and anyone acting in concert or participation with Defendants return to Blades of Green all originals, copies and any and all electronically stored confidential and trade secret information belonging to Blades of Green within **twenty-four (24) hours** . . .

ECF 2 at 4-6.

Broadly speaking, BOG's proposed injunctive relief can be roughly organized into four categories.  First, BOG seeks relief from further alleged use or disclosure of its trade secrets, *id.* ¶¶ a(i)-(a)(ii), (b).  Second, BOG asks this court to halt the alleged breach, or inducement to breach, its confidentiality and non-solicitation agreements with current and former employees, *id.* ¶¶ a(iii)-(a)(v).  Third, BOG requests expedited discovery in support of its motion for a preliminary injunction, *id.* ¶ a(vi).  Fourth, and finally, BOG asks this Court to enjoin competition against it in the State of Maryland for two years, *id.* ¶ b.  As to this final category of relief, BOG wisely conceded at the hearing that—although it may ultimately pursue this remedy—such a drastic request is not appropriate at this stage in proceedings.  As such, this Court will only consider the first two categories of requested relief, including the likelihood of success on the merits of the claims to which they relate, the threat of irreparable harm if not granted, and the related balance of equities and public interest.  BOG's requests for relief related to expedited discovery will be analyzed together with its Motion for Expedited Discovery, ECF 3, discussed in Sec. III., *infra*.

### C. ANALYSIS

#### 1. Likelihood of Success on the Merits

"To obtain preliminary injunctive relief, Plaintiff[] bear[s] the burden to show that they are likely to succeed on one of their claims." *Profiles, Inc. v. Bank of Am. Corp.*, 453 F. Supp. 3d 742, 747 (D. Md. 2020). To do so, a "plaintiff must present a prima facie case but need not show that he is certain to win." *Smyth ex rel. Smyth v. Rivero*, 282 F.3d 268, 276 (4th Cir. 2002) (quoting 11A Charles Alan Wright et al., Fed. Prac. & Proc. § 2948.3). Here, BOG seeks injunctive relief pursuant to its claims for misappropriation of trade secrets (Counts I-II), and for violations of contractual provisions against soliciting current employees (Count V, Count VII). As described below, this Court concludes that BOG has met its burden of establishing likely success on at least one of its trade secrets claims; it has not done so, however, with regards to its claims arising from the alleged solicitation of its employees.

#### a) Misappropriation of Trade Secrets (Counts I-II)

BOG's first category of requested injunctive relief stems from its allegations that Defendants have misappropriated, and are continuing to misappropriate and use, its proprietary and confidential information, *see* ECF 2 ¶¶ a(i)-(a)(ii), (b). In its Complaint, BOG alleges that all Defendants misappropriated its trade secrets in violation of the Federal Defend Trade Secrets Act of 2016, 18 U.S.C. § 1832 *et seq.* (Count I), and the Maryland Uniform Trade Secrets Act, Md. Code Ann., Com. Law § 11-1201 *et seq.* (Count II). This Court concludes that BOG has established, in part, a likelihood of success as to Count II of its Complaint for misappropriation of trade secrets in violation of state law.

To prevail under the Maryland Uniform Trade Secrets Act ("MUTSA"), a plaintiff must show "(1) that it possessed a valid trade secret, (2) that the defendant acquired its trade secret, and (3) that the defendant knew or should have known that the trade secret was acquired by improper

means." *AirFacts, Inc. v. de Amezaga*, 909 F.3d 84, 95 (4th Cir. 2018) (quoting *Trandes Corp. v. Guy F. Atkinson Co.*, 996 F.2d 655, 660 (4th Cir. 1993)); Md. Code Ann., Com. Law § 11-1201(c). As described below, BOG has demonstrated that the unabridged version of its CSR Playbook constitutes a valid trade secret, which was acquired by Defendants in a manner that Defendants knew or should have known to be improper.

The MUTSA defines a trade secret as any information, including programs, techniques, or processes, that:

> (1) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

> (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Md. Code Ann., Com. Law § 11-1201(e) (2019).  To determine whether information is a trade secret, Maryland courts assess: (1) the extent to which the information is known outside of plaintiff's business; (2) the extent to which it is known by employees and others involved in plaintiff's business; (3) the extent of measures taken by plaintiff to guard the secrecy of the information; (4) the value of the information to plaintiff and competitors; (5) the amount, effort, or money expended by plaintiff in developing the information; and (6) the ease or difficulty with which the information could be acquired or duplicated by others.  *AirFacts, Inc.*, 909 F.3d at 95 (citing Restatement (First) of Torts § 757 cmt. b).

Applying this standard, this Court concludes that the unabridged version of BOG's CSR Playbook constitutes a trade secret.  BOG has averred that the document includes information regarding its internal training and educational materials, descriptions of its "True Organic" products and services, passwords and login information for its phone systems and customer management portal, and proprietary information provided by an outside hired consultant.  ECF 14

¶¶ 3-5.  BOG has convincingly alleged that the information detailed in the unabridged CSR Playbook is similar to that which other courts have determined to hold independent economic value.  *See Albert S. Smyth Co. v. Motes*, 2018 WL 3635024, at *4 (D. Md. July 31, 2018) (deeming documents containing customer lists, pricing sheets, and business strategies as trade secrets); *Motor City Bagels v. Am. Bagel Co.*, 50 F. Supp. 2d 460, 478-79 (D. Md. 1999) (finding that a business plan was a trade secret because it included "personal insights and analysis brought to bear through diligent research and by marshaling a large volume of information").  Similarly, BOG has demonstrated that its customer lists and pricing sheets contain information that courts routinely conclude are trade secrets.  *See Albert S. Smyth Co.*, 2018 WL 3635024, at *4.

Similarly, this Court is satisfied at Plaintiff's showing that it undertook reasonable efforts to maintain the secrecy of the unabridged CSR Playbook, its pricing sheet, and customer lists.  *See id*. at *3-4 (finding that a company took reasonable steps to maintain confidentiality by keeping the trade secret documents on encrypted servers protected by firewalls to which only some employees had access, and by utilizing a confidentiality policy in its handbook); *NaturaLawn of Am., Inc. v. West Group, LLC*, 484 F. Supp. 2d 392, 399 (D. Md. 2007) (finding that a franchisor took reasonable steps to keep trade secret customer list secret, despite all franchisees having the list, because the franchise agreements provided for their return upon the end of the franchise relationship).  Here, BOG used company-provided, password-protected computers, required all employees to sign confidentiality provisions as a condition of their employment, and mandated the return of any documents or information in employees' possession upon the conclusion of their employment.  ECF 2-7 ¶ 9.  On these facts, it is likely that BOG can satisfy its burden of showing that the unabridged CSR Playbook, the customer list, and the pricing sheet contain trade secrets.

This Court pauses to note that the limited scope of its finding—that BOG can likely demonstrate that the unabridged CSR Playbook, customer list, and pricing sheet contain trade secrets—does not extend to the entirety of the documents allegedly possessed by Defendants. *See* ECF 1, ECF 2-1 (detailing documents allegedly retained by Defendants). There remain significant factual disputes as to whether these other documents—including the "Mole/Vole Control Estimate & Agreement," the Spring Marketing Plans, the abridged CSR playbook, and the "Advanced Termite Protection Program"—were sufficiently closely-held such that they could fairly be construed as trade secrets or even confidential information. *See* ECF 15 (noting that several of the relevant documents may have been provided to prospective customers or distributed at industry seminars). Moreover, other allegedly misappropriated documents are not described in sufficient particularity as to allow this Court to assess their potential economic value. *Id.* (Plaintiff's references to its "internal meeting documents" and "True Organic materials."). At this juncture, therefore, this Court only concludes that Plaintiff has met its burden of showing only that the unabridged CSR Playbook, customer list, and pricing sheets contain trade secrets.

As to the second element, BOG must show a likelihood that it can prove those documents were acquired by Defendants. As to the unabridged CSR Playbook, the evidence is principally provided in the form of declarations by Ashley Lentz, ECF 2-7, and Lawrence Leahy, ECF 2-2, ECF 14. In his initial declaration, Leahy, BOG's Vice President, avers that Grainger-Smith sent copies of the unabridged CSR Playbook to her personal email account in December, 2021. ECF 2-2 at 35. Lentz, a former account executive for Go Green, asserts that she believes Go Green to be in possession of "Playbooks." ECF 2-7. Moreover during the hearing, BOG's counsel represented that it possessed evidence that Grainger-Smith transmitted the unabridged CSR Playbook to Salefski on January 10, 2022. *See* ECF 15. This Court is cognizant that Go Green

has represented through counsel that it is not in possession of the unabridged CSR Playbook. *Id.* The mere existence of a disputed issue of fact, however, is not sufficient to overcome Plaintiff's well-supported, prima facie claim for misappropriation of trade secrets under Maryland law. *See Smyth ex rel. Smyth*, 282 F.3d 268, 276 (4th Cir. 2002) ("The fact that a preliminary injunction is granted in a given circumstance, then, by no means represents a determination that the claim in question will or ought to succeed ultimately; that determination is to be made upon the 'deliberate investigation' that follows the granting of the preliminary injunction."). In contrast, BOG has not sufficiently demonstrated that its customer lists or pricing sheets were acquired by Defendants. BOG did not provide evidence indicating that its customer lists or pricing sheets were emailed, or otherwise transmitted, from its servers to individuals' personal accounts, nor has it offered facts indicating that its customers have actually been targeted by Defendants. Moreover, at the hearing, BOG conceded that its allegation as to "the theft of some or all of the [its] customer list," is at this point, somewhat speculative. *See* ECF 2-1 at 1. As such, this Court concludes that BOG has satisfied the second element of its claim only with regards to the unabridged CSR Playbook.

Finally, this Court concludes that BOG can likely prove that Defendants were, or should have been, aware that the unabridged CSR Playbook was acquired by improper means. BOG has alleged that the document was transferred from its company-provided device to a former employee's personal email. ECF 2-2 ¶ 35. It was then allegedly transmitted via email to Salefski, himself a former BOG employee. ECF 15. In light of the fact that Salefski—like all BOG employees—executed a Confidentiality Agreement prohibiting the dissemination of BOG's confidential information, it is likely that he was aware that his alleged receipt of the document from Grainger-Smith was improper. *See* ECF 2-2 at 4.

Simply put, at this early stage, this Court is satisfied that BOG is likely to succeed on the merits of its MUTSA claim, at least with regards to the alleged misappropriation of its unabridged CSR Playbook.  In light of this Court's conclusion as to the likelihood of BOG's success on Count II of its Complaint, it is unnecessary to assess its related claim for misappropriation of trade secrets under federal law (Count I).  *See Profiles, Inc.*, 453 F. Supp. 3d at 747 (stipulating that a plaintiff must demonstrate likelihood of success on one of its claims).

### b) Breach, or Inducement to Breach, Non-Solicitation of Employee Clauses (Counts V, VII)

Next, BOG seeks several forms of immediate injunctive relief pursuant to its claims that Defendants are engaged in the improper solicitation of its employees.  In its Complaint, BOG asserts two theories of liability for such solicitation.  In Count V, BOG alleges that Go Green tortiously induced Drennan and Salefski to breach their contractual prohibitions against soliciting BOG employees for hire.  ECF 1 ¶¶ 95-100.  Similarly, in Count VII, BOG alleges that Drennan and Salefski breached their Separation and Confidentiality Agreements, respectively, by directly or indirectly soliciting BOG employees on behalf of Go Green for hire.  *Id*. ¶ 116.  At this juncture, however, BOG has failed to establish likelihood of success on the merits of either claim, at least to the extent that they are premised on the solicitation of its employees.[2]

To establish tortious interference under Maryland law, a plaintiff must demonstrate: (1) a contract between plaintiff and a third party; (2) defendants' knowledge of that contract; (3)

---

[2] BOG also alleges liability for Drennan's and Salefski's alleged breach, and Defendants' alleged inducement to breach, contractual provisions prohibiting (i) dissemination of BOG's confidential information; and (ii) the solicitation of BOG's customers. ECF 1 (Counts V, VII).  As noted above, however, BOG conceded at the hearing that its allegations regarding the solicitation of BOG customers is, at this point, somewhat circumspect.  Similarly, BOG has not provided sufficient facts to allow this Court to assess its allegations regarding dissemination of confidential information.  To the extent, however, that Drennan and Salefski allegedly breached their confidentiality provisions by disseminating the unabridged CSR Playbook, BOG has already demonstrated that it may be entitled to injunctive relief from this conduct, *see* Sec. II.C.1.A, *supra*.

defendants intentional interference with that contract; (4) breach of that contract by the third party;

and (5) resulting damages to the plaintiff.  *See Fowler v. Printers II, Inc.*, 89 Md. App. 448, 466,

(Md. Ct. Spec. App. 1991).  Likewise, under Maryland law, "[t]o prevail in an action for breach

of contract, a plaintiff must prove that the defendant owed the plaintiff a contractual obligation

and that the defendant breached that obligation."  *Taylor v. NationsBank, N.A.*, 365 Md. 166, 175

(2001).  Here, however, outstanding legal and factual ambiguities preclude this Court from finding

that BOG is likely to prevail on either claim.

Neither party disputes that both Drennan's and Salefski's respective contracts included

provisions that prohibited the direct or indirect solicitation of current BOG employees to accept

employment elsewhere.  *See* ECF 2-3 ¶ 15 (Drennan Separation Agreement); ECF 2-4 ¶ 4(A).  At

the hearing, however, Defendants' counsel represented its belief that the restrictive covenants are

unenforceable as overbroad.  ECF 15 (citing *Paul v. ImpactOffice LLC*, 2017 WL 2462492, at *6

(D. Md. June 6, 2017)).  At this juncture, this Court lacks sufficient information to assess BOG's

probability of demonstrating that the restrictive covenants at issue here conform to the

requirements of Maryland law.  *See id.* at * 4; *see also Medispec, Ltd. v. Chouinard*, 133 F. Supp.

3d 771, 773 (D. Md. 2015) (for a restrictive covenant to be enforceable "(1) the employer must

have a legally protected interest, (2) the restrictive covenant must be no wider in scope and duration

than is reasonably necessary to protect the employer's interest, (3) the covenant cannot impose an

undue hardship on the employee, and (4) the covenant cannot violate public policy.").

Significant factual disputes also prevent this Court from finding that BOG will likely

prevail on the merits.  In its Complaint and Motion for TRO, BOG alleges that Drennan and

Salefski persuaded Telinda Maddox, ECF 2-1 at 9, Riley Grainger-Smith, *id.* at 10, and Mike

Baker, *id.*, to terminate their respective employments with BOG and join Go Green.  BOG further

alleged that Drennan and Salefski unsuccessfully solicited for hire several additional BOG employees, including Sarah Superior, Natalie Rose, Tom Green, Dan Smalt, Tyler Haigis, and James Derrick.  ECF 1 ¶¶ 59-62.  To substantiate its claims, BOG provided screenshots of text messages between Salefski and Haigis, in which Salefski states that he "may have an opportunity for you to join some familiar faces and a good environment if you ever find yourself looking for a change."  ECF 14-1.  At the hearing, however, Defendants disputed that any of the relevant individuals, including Maddox, Baker, and Grainger-Smith, were solicited during the terms of their employment with BOG.  Moreover, Defendants' counsel represented that text exchange between Salefski and Haigis occurred on December 15, 2021, five days after BOG terminated Haigis's employment on December 10.  At this early stage, the Court lacks requisite factual information sufficient to assess the parties' substantial legal and factual disputes.

Simply put, BOG's theories of liability arising from the alleged solicitation of its employees are both plagued by material legal and factual ambiguities, which preclude this Court from finding that it is likely to prevail on the merits of its claims.  This Court's conclusion as to the speculative nature of BOG's claims for the solicitation of its employees precludes the award of injunctive relief targeted at preventing such harms.

### 2.   Irreparable Harm

This Court is satisfied at BOG's showing of its likelihood to prevail on at least one of its claims for misappropriation of trade secrets.  Even so, "a preliminary injunction does not follow as a matter of course from a plaintiff's showing of a likelihood of success on the merits."  *Benisek v. Lamone*, 138 S. Ct. 1942, 1943-44 (2018).  Rather, to be entitled to injunctive relief, BOG must make a "clear showing" that, without an injunction, it will suffer irreparable harm that is "neither remote nor speculative, but actual and imminent."  *Direx Israel, Ltd. v. Breakthrough Medical*

15

*Group*, 952 F.2d 802, 812 (4th Cir. 1991) (quoting *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir. 1989)).  BOG contends that it will be irreparably injured if Defendants are not enjoined, broadly speaking, against using or disseminating its trade secrets, ECF 2 ¶¶ a(i)-(a)(ii), (b);and breaching, or inducing the breach of, its various confidentiality and non-solicitation agreements with its current and former employees, *id.* ¶¶ a(iii)-(a)(v).  This Court is persuaded as to the first of these two arguments, and will address them each in turn.

First, this Court agrees that BOG will likely suffer irreparable harm if the trade secrets contained in the unabridged CSR Playbook are retained by Defendants.  Courts have repeatedly concluded that wrongful utilization of a competitor's confidential and proprietary information favors injunctive relief.  *See Brightview Grp., LP v. Teeters*, 441 F. Supp. 3d 115, 141 (D. Md. 2020); *E.I. DuPont de Nemours & Co. v. Kolon Indus., Inc.*, 894 F. Supp. 2d 691, 708 (E.D. Va. 2012).  BOG has established that the unabridged CSR Playbook includes proprietary information regarding its marketing and sales strategies, training materials, and specialized sales techniques. This Court is persuaded that, as Go Green attempts to expand its operations in Maryland, it could potentially leverage information contained in the unabridged CSR Playbook to undercut BOG's existing business through advantageous marketing efforts and targeted outreach.  The likelihood that Defendants will do so is increased by the evidence—in the form of a declaration by a former Go Green employee—that "both Drennan and Salefski hated Blades of Green and made it clear that they wanted to hurt Blades of Green."  ECF 2-7 ¶ 5.  Accordingly, this Court is satisfied that BOG will likely incur irreparable harm unless Defendants are enjoined from the use or continued retention of BOG's unabridged CSR Playbook.

Second, by contrast, BOG's argument that it will suffer irreparable harm if Defendants are not enjoined from breaching, or inducing the breach of, various confidentiality and non-solicitation

agreements with its current and former employees fails for several reasons. *See* ECF 2-1 at 30. First, this Court observes that BOG is, in effect, requesting that this Court enter an injunction against conduct that, by its own description, is already prohibited under its existing contracts. BOG provides insufficient justification as to why this Court should employ "an extraordinary remedy never awarded as of right" as a blanket contract-enforcement mechanism. *Winter*, 555 U.S. at 24. Second, BOG cannot establish that irreparable harm will flow from the breach of contractual provisions that are otherwise enforceable by liquidated damages clauses. *See* ECF 2-3 ¶ 16(B); ECF 2-4 ¶ 5(B). This Court can hardly conclude that BOG will suffer irreparable harm, such that "monetary damages[] are inadequate to compensate for that injury," when BOG has already calculated and reduced its potential harm to a specified monetary amount. *See QueTel Corp. v. Abbas*, 819 F. App'x 154, 157 (4th Cir. 2020). Finally, with regards to the non-solicitation clauses specifically, BOG did not demonstrate that Defendants have hired, or will hire, employees of a sufficient number, rank, or quality as to warrant injunctive relief. BOG alleges that Go Green has hired five of its former employees: Drennan, Salefski, Maddox, Grainger-Smith, and Baker. *See* ECF 2-1. Of this group, however, only one individual appears to have been a current, high-value BOG employee. *Id.* at 10 (describing Mike Baker as the "lead technician on Blades of Green's cutting edge organic treatments."). The remaining employees had either been terminated by BOG prior to their employment at Go Green, or were not described in sufficient detail as to assess their role. *See id.* at 4, 6 (describing Drennan's and Salefski's terminations for cause); ECF 2-2 ¶¶ 30, 35 (referring to Maddox and Grainger-Smith only as "employee[s]"). Although BOG alleges that Defendants have undertaken efforts to solicit additional employees, these efforts have apparently been unsuccessful. *See* ECF 1 ¶ 33.

This Court is satisfied that BOG will suffer irreparable harm if Defendants, its competitors, are permitted to improperly retain the unabridged playbook replete with proprietary information on its training, sales, and marketing strategies.  However, at this stage in proceedings, BOG has not made a clear showing as to imminent irreparable injury arising from the alleged violations of its confidentiality and non-solicitation contracts justifying injunctive relief.

### 3.   Balance of the Equities and Public Interest

To be entitled to a TRO or preliminary injunction, BOG must finally demonstrate that the balance of equities and public interest weighs in its favor.  *See Benisek v. Lamone*, 138 S. Ct. 1942, 1943-44 (2018).  Like other courts in this District, this Court will analyze the balance of equities and public interest together.  *See Int'l Refugee Assistance Project v. Trump*, 857 F.3d 554, 602 (4th Cir. 2017), *as amended* (June 15, 2017), *vacated and remanded on other grounds sub nom.*, *Trump v. Int'l Refugee Assistance*, 138 S. Ct. 353 (2017) ("As the district court did, we consider the balance of the equities and the public interest factors together.").  Here, the final two factors for issuing a TRO fall in BOG's favor.

First, to the extent the public interest is implicated in a dispute between private entities, it tilts in favor of safeguarding protections for trade secrets and mitigating unfair business practices. *See NaturaLawn of Am., Inc.*, 484 F. Supp. 2d at 404 ("It is also in the public's interest to validate . . . the proprietary nature of trade secrets.").  While the public certainly has an interest in promoting free market competition in a capitalist economy, that interest is not protected unless the legal system "prevent[s] unethical business behavior" and stops market participants from driving "another competitor out of business by unfairly misappropriating trade secrets" and other confidential business information. *See Advanced Instructional Sys., Inc. v. Competentum USA, Ltd.*, 2015 WL 7575925, at *6 (M.D.N.C. Nov. 25, 2015) (citations omitted).

18

Second, the balance of equities in this case weighs heavily in favor of BOG. As discussed above, BOG faces the prospect of suffering irreparable harm through the improper utilization of its unabridged CSR Playbook by a competitor. BOG has adequately demonstrated that this document includes confidential information acquired over decades, which is at risk of being used to undermine its business. Moreover, any potential hardships suffered by Defendants as a result of the injunction are minimal. If, as BOG insists, Defendants are in possession of the unabridged CSR Playbook, then Defendants will suffer no harm by being enjoined against retaining or using information they have no legal authority to possess. The law has no interest in preventing the harms that may flow from wresting away a party's ill-gotten advantage. *See Gen. Motors Corp. v. Urban Gorilla, LLC*, 500 F.3d 1222, 1229 (10th Cir. 2007) ("[W]hen the case for infringement is clear, a defendant cannot avoid a preliminary injunction by claiming harm to a business built upon that infringement."); *Brightview Grp., LP*, 441 F. Supp. 3d at 142. Alternatively, if, as Defendants contend, they do not have BOG's unabridged CSR Playbook, then they will not be required to take any action in response to the injunction and will suffer no harm.

### 4. Scope and Bond

Having determined that BOG is entitled to some preliminary injunctive relief, the Court must ascertain the proper scope of the injunction. Federal Rule of Civil Procedure 65(d) provides that every order granting an injunction provide (1) the reasons for the injunction, (2) the specific terms of the injunction, and (3) a description in "reasonable detail" of the act(s) restrained or required. These requirements "are mandatory." *Alberti v. Cruise*, 383 F.2d 268, 271-72 (4th Cir. 1967).

In light of this Court's determinations as to the likelihood of success of BOG's claims, and the potential injuries resulting thereof, it cannot properly award BOG's proposed relief in its

entirety.  Rather, it will award relief that is appropriately tailored to the nature of the harm BOG stands to incur absent a TRO, and circumscribed by the principal determinations made herein.  As discussed throughout, BOG has showed that it will likely prevail on its state law claim for misappropriation of its unabridged CSR Playbook; that absent an injunction, BOG would suffer irreparable injury from wrongful utilization of this document; and that the balance of equities and public interest favor relief.  Conversely, BOG's allegations as to the theft or dissemination of other trade secrets or confidential information are—at this juncture—far too speculative for this Court to conclude that BOG will establish liability for their misappropriation, or that irreparable harm would result from their improper use.  Moreover, BOG has not established a likelihood of success as to either of its claims arising from the alleged solicitation of its employees.  Finally, even if it had done so, this Court is unconvinced that BOG would suffer actual and imminent harm in the absence of an injunction prohibiting violations of its confidentiality and non-solicitation agreements with current and former employees.

This Court will accordingly issue a TRO enjoining Defendants and all persons and entities in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, including, without limitation, their officers, agents, servants, employees, and attorneys from accessing, using, disclosing, or disseminating BOG's unabridged CSR Playbook. This Court will further order that the same return to BOG all originals and copies of the unabridged CSR Playbook within seventy two (72) hours of entry of this order.  BOG is, of course, entitled to seek additional, broader forms of injunctive relief in its subsequent motion for preliminary injunction if expedited discovery suggests that other relief might be warranted.

Federal Rule of Civil Procedure 65(c) provides that no preliminary injunction can be issued unless the party awarded injunctive relief is required to post a bond in a sum that "the court deems

proper."  The bond shall secure "the payment of such costs and damages as may be incurred or suffered" by the enjoined party if a later court deemed them "wrongfully enjoined."  *Id.*  Thus, if the Court concludes that the risk of harms to an enjoined party is slight or remote then a nominal bond may suffice.  *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 421 n.3 (4th Cir. 1999) (citing *Int'l Controls Corp. v. Vesco*, 490 F.2d 1334 (2d Cir. 1974)).  Here, as explained above, Defendants have shown no likelihood of harm posed by the entry of a TRO.  As such, in conjunction with the entry of this Order, the Court will require BOG to post a nominal $100 bond.

## III.   MOTION FOR EXPEDITED DISCOVERY

BOG also moves for limited expedited discovery for the purpose of preparing a preliminary injunction motion.  Rule 26(d)(1) provides that a "party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except . . . when authorized by these rules, by stipulation, or by court order."  Rules 30(a)(2) and 34(b)(2)(A) further allow the court to expedite the timelines for responding to document requests and for depositions.  *See L'Occitane, Inc. v. Trans Source Logistics, Inc.*, 2009 WL 3746690, at *1 (D. Md. Nov. 2, 2009) (citations omitted).  "Expedited discovery is particularly appropriate where a preliminary injunction is sought."  *Id.* (citing *Ciena Corp. v. Jarrard*, 203 F.3d 312, 324 (4th Cir. 2000); *Dan River, Inc. v. Unitex Ltd.*, 624 F.2d 1216, 1220 (4th Cir. 1980)).  Courts in this District have adopted a reasonableness standard in reviewing expedited discovery requests, determining whether the request is supported by good cause considering the totality of the circumstances.  *See Oce N. Am., Inc. v. MCS Serv., Inc.*, 2010 WL 11553001, at *1 (D. Md. June 22, 2010).  Even where good cause exists, the discovery request must be "narrowly tailored to obtain information relevant to a preliminary injunction determination."  *L'Occitane, Inc.*, 2009 WL 3746690, at *2.

This Court believes that good cause exists for limited expedited discovery in aid of a preliminary injunction. Even so, the discovery requests must be narrowly aimed at determining whether, and to what extent, Defendants solicited BOG's employees or obtained BOG's confidential or proprietary information. *Id*. This Court will, accordingly deny as overbroad the following requests:

> Request 1: All communications between and among Defendants regarding or related to any aspect of Plaintiff's business.

> Request 5: Any and all agreements by and among Defendants related to employment or ownership interests.

> Request 6: Copies of any documents showing Defendants' plans to move into the Maryland lawn and pest control market.

> Request 7: Copies of Defendants' customer lists, customer information, employee lists, operating procedures, onboarding procedure, collection procedures, playbooks, advertising material, employee incentive programs, pay rates, fee schedules, templates, customer service scripts, training checklists, budget billing documents, and training manuals for the entity operating as Go Green.

> Request 10: Copies of documents showing your corporate structures.

ECF 3-1. Next, this Court will grant as modified the following requests:

> Request 2: All documents and communications related to, regarding, or with the following individuals:
> > d. Pam Green
> > e. Tom Green
> > f. Sarah Superior
> > g. Natalie Rose
> > k. Victoria Osgood
> > n. Tyler Haigis
> > o. Dan Smalt
> > p. James Derrick[3]

---

[3] This Court considers BOG's initial request overbroad as applied to the individuals that it alleges are currently employed by Go Green, including (a) Drennan, (b) Salefski, (q) Maddox, (r) Grainger-Smith, and (s) Baker. Should BOG significantly narrow that request, it could fairly be within the scope of expedited discovery. Moreover, this Court considers requests related to individuals not named by BOG in either its Complaint or Motion for TRO to be beyond the scope of expedited discovery. *See* ECF 3-1 at Request 2 (including requests for information regarding (c) Bone, (h) Sullivan, (i) Stull, and (j) Ray).

Request 3: All documents related to Plaintiff's customer lists, customer information, employee lists, operating procedures, onboarding procedure, collection procedures, playbooks, advertising material, employee incentive programs, pay rates, fee schedules, templates, customer service scripts, training checklists, budget billing documents, and training manuals.[4]

Request 4: All documents related to any employment of the individuals identified in Request No. 2 **[as modified by this Court's order, dated February 2, 2022]** with any Defendant, including solicitation emails, offers of employment, employment contracts, or other communications **about the hiring process or employment terms**, including text messages by or among those individuals or any subset.

Request 8: All communications between or among defendants or any individual identified in Request No. 2 **[as modified by this Court's order, dated February 2, 2022]** related to confidentiality agreements and/or non-solicitation agreements or restrictions as to Blades of Green.

*Id.* Finally, the following expedited discovery request will be granted:

Request 9: Copies of all documents and communications, referencing, related or arising from any direction to target Blades of Green, its employee [*sic*], or its information.

*Id.* Defendants shall provide responses to BOG's requests for documents within ten (10) days of service of such requests. With regards to requests denied in whole or in part, should BOG significantly narrow the requests, the parties should first confer about whether there is consent to respond. If the parties are unable to reach agreement after good faith efforts to do so, BOG may resubmit the requests to the Court for consideration in accordance with this Court's opinion and order.[5]

---

[4] This Court has revised BOG's original request to eliminate the phrase "or concerning" as it appeared after "related" and to remove the phrase "business from any source, including without limitation . . ."which appeared before the term "customer lists."

[5] As this Court observed during its telephonic hearing, ECF 15, having a neutral party review and compare the parties' respective internal documents to determine the scope of documents potentially in Defendants' possession might be reasonable and mutually beneficial. It would therefore encourage both parties to explore similar avenues for potential resolution of some of their disagreements.

IV.    **CONCLUSION**

For the reasons set forth above, Plaintiff's Motion for a TRO and Preliminary Injunction, ECF 2, is GRANTED in part and DENIED in part.  Its Motion for Expedited Discovery, ECF 3, is GRANTED in part and DENIED in part.  A separate Order follows.


Dated: February 3, 2022                                    _____/s/_____
                                                                          Stephanie A. Gallagher
                                                                           United States District Judge