IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| BLADES OF GREEN, INC. | * | |
| Plaintiff, | * | |
| v. | * | Civil Case No.: SAG-22-00176 |
| GO GREEN LAWN AND PEST, LLC., *et al.*, | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Blades of Green, Inc. ("BOG") filed this action against Go Green Lawn and Pest, LLC, Andrews Lawn and Landscaping LLC, David Drennan, and Tyler Salefski (collectively, "Defendants")[1] seeking redress for alleged misappropriation of its trade secrets, false designation of its goods and services, unfair competition, tortious interference with contract, civil conspiracy, and breach of contract, ECF 1. Defendants have filed a Motion to Dismiss the Complaint ("Motion"), ECF 25. The issues have been fully briefed, ECF 25-1, ECF 30, 33, and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2021). For the following reasons, Defendants' Motion will be granted in part and denied in part.

I.  **BACKGROUND**

The following facts are derived from the Complaint, ECF 1, and are taken as true for purposes of evaluating Defendants' Motion. This action concerns a lawsuit by BOG, a Maryland corporation offering lawn care and pest control to homeowners in Maryland, the District of Columbia, and Virginia. ECF 1 ¶ 9. Defendants Go Green Lawn and Pest, LLC, and Andrews

---

[1] An additional Defendant, Lawnscapes, Etc., has been voluntarily dismissed. ECF 21, ECF 22.

Lawn and Landscaping, LLC (collectively "Go Green") are Pennsylvania corporations that offer lawn care and pest control services in Pennsylvania and Northern Delaware, and are seeking to expand into Maryland. *Id.* ¶¶ 2-4, 13-15.

Defendant David Drennan worked for BOG for over six years, eventually advancing to the role of Director of Operations, in which capacity he enjoyed access to confidential and proprietary marketing lists, marketing plans, and sales strategies. ECF 1 ¶ 16. BOG terminated Drennan for cause in February, 2021, at which point he and BOG executed a separation and confidentiality agreement ("Separation Agreement"). *Id.* ¶¶ 17-18. In relevant part, the Separation Agreement prohibited Drennan from: (i) disclosing BOG's confidential information ("Confidentiality Clause"); (ii) soliciting current or future BOG employees for two years ("Employee Non-Solicitation Clause"); and (iii) soliciting current or prospective BOG customers for two years ("Customer Non-Solicitation Clause"). *Id.* ¶¶ 19-20. The Separation Agreement further required that Drennan disclose the restrictive covenants to his new employer if such employer is a competitor of BOG. *Id.* ¶ 22. After his separation from BOG, "Drennan began working directly or indirectly for Go Green." *Id.* ¶ 21.

Defendant Tyler Salefski began working for BOG as a Solutions Specialist, an internal sales position, in September, 2017. *Id.* ¶ 23. At the time of his hire, Salefski entered the same non-solicitation and confidentiality agreement ("Employment Agreement") that all BOG employees must execute as a condition of their employment. *Id.* ¶ 24. The Employment Agreement included a Confidentiality Clause, an Employee Non-Solicitation Clause, and a Customer Non-Solicitation Clause that are materially similar, although not identical, to those contained in Drennan's Separation Agreement. *Compare id.* ¶¶ 19-20 *with id.* ¶¶ 24-26. BOG

terminated Salefski in April, 2021, and he subsequently became employed by Go Green. *Id.* ¶¶ 27-28.

"Shortly after hiring Drennan and Salefski, Go Green began a concerted and malicious effort to destroy [BOG's] business operations." *Id.* ¶ 29. First, Go Green induced current and former BOG employees to misappropriate BOG's trade secrets and confidential information. *See, e.g., id.* ¶¶ 31, 47-48. Second, Defendants attempted to improperly hire away BOG's workforce; these employees were solicited by Defendants with the express intent of inducing them to misappropriate confidential information. *Id.* ¶¶ 31, 41-44, 54, 59-62. Third, Go Green began offering to customers its "Advanced Termite Protection Program," a term that BOG contends it originated. *Id.* ¶¶ 65-66. The marketing materials for Go Green's Advanced Termite Protection Program includes an unattributed, verbatim recitation of phrases used in BOG's materials. *See id.* ¶¶ 66-67 (quoting BOG and Go Green materials that both state "[s]ince every home is different, choosing the most effective system for your home is very important. To that end, we are offering our Advanced Termite Protection Program that provides a preventative and curative termite control program with the use of advanced termite liquid treatment.").

BOG filed the Complaint in this Court on January 24, 2022, alleging misappropriation of trade secrets in violation of federal and state law (Counts I-II); false designation of origin in violation of the Lanham Act against Go Green (Count III); unfair competition (Count IV); tortious interference with contract (Count V); civil conspiracy (Count VI); and breach of contract against Drennan and Salefski (Count VII). ECF 1. BOG also sought a temporary restraining order, which this Court granted in part and denied in part in February, 2022. ECF 16, ECF 17.

## II.     STANDARD OF REVIEW

Under Rule 12(b)(6), a defendant may test the legal sufficiency of a complaint by way of a motion to dismiss. *See In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom.*, *McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Federal Rule of Civil Procedure 8(a)(2).  That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for all civil actions[.]") (quotation omitted); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017).  However, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555.  Further, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013).  If a

4

complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556.

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Semenova v. MTA*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011). However, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Courts generally do not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defense" through a Rule 12(b)(6) motion. *Edwards*, 178 F.3d at 243 (quoting *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). However, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long*

5

*Term Disability Plan*, 553 F.3d 334, 336 (4th Cir. 2009). "This principle only applies, however, if all facts necessary to the affirmative defense 'clearly appear[] *on the face of the complaint*.'" *Id.* (quoting *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993) (emphasis and alterations in *Goodman*)).[2]

## III. DISCUSSION

### A. Federal Trade Secrets Claim (Count I)

In Count I, BOG alleges that Defendants misappropriated its trade secrets in violation of the Federal Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1832 *et seq*. To state a claim under DTSA, a plaintiff must allege that: "(1) it owns a trade secret which was subject to reasonable measures of secrecy; (2) the trade secret was misappropriated by improper means; and (3) the trade secret implicates interstate or foreign commerce." *Philips N. Am. LLC v. Hayes*, 2020 WL 5407796, at *7 (D. Md. Sept. 9, 2020) (citing 18 U.S.C. § 1836(b)(1)). Defendants insist that BOG's DTSA claim must be dismissed for failure to sufficiently allege the requisite nexus to interstate commerce. ECF 25-1 at 7. Defendants' argument is unpersuasive, and will be rejected.

DTSA permits recovery for the misappropriation of trade secrets, which are "related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1). Defendants contend that BOG's allegations that it conducts commercial activities in at least three states, *see* ECF 1 ¶¶ 9, 12, 77, does not sufficiently plead interstate commerce because "BOG's lawn care and pest control services . . . literally stay at the customer's home."

---

[2] Defendants attached an exhibit to their Motion to Dismiss, ECF 25-2. As a general rule, courts do not consider extrinsic evidence at the motion to dismiss stage that was not appended, or integral, to the Complaint. *See Reamer v. State Auto. Mut. Ins. Co.*, 556 F. Supp. 3d 544 (D. Md. 2021). There is no indication that Defendants' exhibit falls within an exception to this rule, nor has Defendants styled its Motion, in the alternative, as one for summary judgment. Accordingly, this Court has not reviewed Defendants' exhibit, nor has it considered any arguments related to the exhibit, which appears in Defendants' memoranda in support of their Motion.

6

ECF 25-1 at 8  Defendants' strained interpretation of the DTSA runs contrary to both common sense and the weight of authority.  BOG engages in interstate commerce when it provides services to homeowners outside the State of Maryland and, in turn, receives remuneration that is transferred into Maryland from out-of-state customers.  To the extent that its trade secrets are used to render such services, they relate to interstate commerce.  The cross-border nature of the transaction is not somehow negated merely because BOG's services, once rendered, remain stationary.  Unsurprisingly, then, courts routinely conclude that a plaintiff satisfies its pleading burden by alleging that it is engaged in national or international sales. *See Philips N. Am.*, 2020 WL 5407796, at *11 (collecting cases).[3]  In sum, BOG has adequately alleged that its trade secrets relate to services used in interstate commerce, which therefore fall within the protection of DTSA.  Defendants' Motion to Dismiss Count I will be denied.

### B. Lanham Act (Count III)

In Count III, BOG alleges that Go Green engaged in "reverse passing off" in violation of § 43(a) of the Lanham Act.[4]  *See* 15 U.S.C. § 1125(a)(1)(A).  Specifically, BOG alleges that Go Green began marketing its "Advanced Termite Protection Program," in January, 2022, despite BOG having originated that term.  ECF 1 ¶ 65.  BOG further alleges that Go Green's marketing materials for its program contain a "verbatim recitation of [BOG's] program and marketing, which has not been properly attributed to Plaintiff."  *Id.* ¶ 68; *see also id.* ¶¶ 66-67 (quoting identical

---

[3] Defendants' reliance on *Hydrogen Master Rts., Ltd. v. Weston*, 228 F. Supp. 3d 320 (D. Del. 2017), is unavailing.  In that case, the complaint "fail[ed] to allege any nexus between interstate or foreign commerce." *Id.*  By contrast, the Complaint here expressly alleges that the trade secrets in question relate to lawn services that BOG provides to homeowners in Maryland, Virginia, and the District of Columbia.  ECF 1 ¶¶ 9, 12, 77.

[4] *See* ECF 30 at 13 n.5 (BOG Opp'n to Mot. to Dismiss clarifying its claim in Count III as an action for reverse passing off); *see also id.* at 17 n.8 (stating that the gravamen of its claim is for reverse passing off, not false advertisement).

language in both BOG's and Go Green's marketing materials). In its Motion, Defendants contend that the Complaint fails to state a claim for reverse passing off. This Court agrees.

Reverse passing off occurs when a "producer misrepresents someone else's goods or services as his own." *Universal Furniture Int'l, Inc. v. Collezione Europa USA, Inc.*, 618 F.3d 417, 438 (4th Cir. 2010) (quoting *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 28 n.1 (2003)). To prevail on a theory of reverse passing off, a plaintiff must show: "(1) that the work at issue originated with the plaintiff; (2) that origin of the work was falsely designated by the defendant; (3) that the false designation of origin was likely to cause consumer confusion; and (4) that the plaintiff was harmed by the defendant's false designation of origin." *Id*. (quoting *Syngenta Seeds, Inc. v. Delta Cotton Coop., Inc.*, 457 F.3d 1269, 1277 (Fed. Cir. 2006)). For purposes of such a claim, the "origin of the work," "refers to the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods." *Dastar Corp*, 539 U.S. at 37.

The Complaint fails to allege that Go Green's work originated with BOG.[5] To do so, BOG "must allege that the actual goods provided to [customers] by [Go Green] were in fact produced by [BOG], or the actual services provided to [customers] by [Go Green] were in fact performed by [BOG]." *Tao of Sys. Integration, Inc. v. Analytical Servs. & Materials, Inc.*, 299 F. Supp. 2d 565, 572 (E.D. Va. 2004). The Complaint does not allege that BOG actually produced or performed the goods or services that Go Green offers through its Advanced Termite Protection Program; instead it alleges that BOG originated the *name and description* that Go Green uses to market those services. *See* ECF 1 ¶¶ 65, 68. The Lanham Act, however, does not create a cause

---

[5] In light of this Court's conclusion regarding the origin of work, this Court finds it unnecessary to consider Defendants' arguments regarding the sufficiency of BOG's allegations of consumer confusion and injury.

8

of action for plagiarism, nor does it guard against the false designation of ideas or communications that may be embodied in any particular good or service.[6] *Dastar Corp.*, 539 U.S. 23 at 24, 36 ("[R]eading § 43(a) of the Lanham Act as creating a cause of action for, in effect, plagiarism—the use of otherwise unprotected works and inventions without attribution—would be hard to reconcile with our previous decisions."). Because the Complaint alleges that BOG originated the marketing materials used to advertise Go Green's work, but not the work itself, it has not stated a claim for reverse passing off. *Compare Tao*, 299 F. Supp. 2d at 572 (no reverse passing off claim where plaintiff alleges that defendant's proposal for business takes credit for expertise and capabilities belonging to plaintiff) *with Syngenta Seeds*, 457 F.3d at 1278 (false designation satisfied where defendant sold plaintiff's products in bags labeled with defendant's name).

Finally, BOG argues that Go Green's verbatim recitation of its Advanced Termite Protection program is analogous to those Lanham Act claims brought by:

> [A] plaintiff who . . . charges the defendant with using a mark—a brand name, a word, "a slogan, a symbol, a combination of words and symbols, an ornamental feature, a distinctive shape . . ."—so similar to that of the plaintiff's that the public may be confused as to the source of the good or service.

ECF 30 at 14 (quoting *Tao*, 299 F. Supp. 2d at 571). Although these allegations constitute the "typical § 43(a) claim involving the misuse of a mark," *Tao*, 299 F. Supp. 2d at 572, it is not the claim that BOG has pleaded. *See* ECF 30 at 13 n.5 ("Here, [BOG] pleads a false designation of origin claim based on a reverse passing off theory." (citing ECF 1 ¶¶ 88-91)). If it had styled its claim in Count III as misuse of a mark, BOG would have been required to allege that it owned a

---

[6] BOG offers an excerpt from *Dastar Corp.* to resist dismissal. ECF 30 at 15. Read in full, the quotation undermines, rather than strengthens, its claim. *See Dastar Corp.*, 539 U.S. at 31 ("That claim would undoubtedly be sustained if Dastar had *bought some of New Line's Crusade videotapes* and merely repackaged them as its own.") (emphasis added). This Court agrees that a reverse passing off claim would be sustained if Go Green stole BOG's actual goods and repackaged them as its own. The Complaint, however, does not allege these facts.

valid and protectable mark or tradename. *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 769 (1992) (Section 43 protects suggestive, fanciful, or arbitrary marks, as well as certain descriptive marks that are inherently distinctive or have acquired distinctiveness through secondary meaning); *see also Halal Shack Inc. v. Legends Halal Shack, LLC*, 2020 WL 570128, at *2 (D. Md. Feb. 5, 2020) (reciting elements of typical false designation claim). The Complaint contains no such allegations. Because the Complaint fails to state a viable § 43(a) Lanham Act claim, Defendants' Motion will be granted as to Count III.

### C. Civil Conspiracy (Count VI)

BOG alleges in Count VI that Defendants conspired to unlawfully compete against BOG by: (1) misappropriating its trade secrets and other confidential and proprietary information; and (2) soliciting its current and former employees. "Under Maryland law, civil conspiracy is defined as the 'combination of two or more persons by an agreement or understanding to accomplish an unlawful act or to use unlawful means to accomplish an act not in itself illegal, with the further requirement that the act or the means employed must result in damages to the plaintiff.'" *Marshall v. James B. Nutter & Co.*, 758 F.3d 537, 541 (4th Cir. 2014) (quoting *Hoffman v. Stamper*, 385 Md. 1, 867 (2005)). To prevail, a plaintiff must demonstrate both the agreement itself, and also the commission of an overt act in furtherance of the agreement, which caused the plaintiff actual injury. *Id.*; *see also Alleco Inc. v. Harry & Jeanette Weinberg Found., Inc.*, 340 Md. 176 (1995). Because the "[i]ndependent acts of two wrongdoers do not make a conspiracy" a plaintiff must allege facts sufficient to infer the existence of an agreement or concerted action. *Murdaugh Volkswagen, Inc. v. First Nat. Bank of South Carolina*, 639 F.2d 1073, 1076 (4th Cir. 1981).

Defendants contend that because the Complaint alleges a conspiracy between Go Green, Drennan, and Salefski, it is barred by the intracorporate conspiracy doctrine. The intracorporate

conspiracy doctrine maintains that because the acts of corporate agents are legally attributed to the corporation itself, "a conspiracy between a corporation and its agents, acting within the scope of their employment, is a legal impossibility." *Marmott v. Maryland Lumber Co.*, 807 F.2d 1180, 1184 (4th Cir. 1986). Subject to certain exceptions, the intracorporate conspiracy doctrine "[i]n essence, [] means that a corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves." *Baltimore-Washington Tel. Co. v. Hot Leads Co., LLC*, 584 F. Supp. 2d 736, 744 (D. Md. 2008). To resist dismissal, BOG argues that: (1) it alternatively pleaded that Drennan was not an employee or agent of Go Green; and (2) it alleged that the conspiracy extended to additional individuals not affiliated with Go Green. ECF 30 at 19. This Court finds BOG's latter position persuasive, and will accordingly deny Defendants' Motion as to Count VI.

As an initial matter, this Court finds no support on the face of the Complaint for BOG's assertion that it alternatively pleaded that Drennan was not an agent of Go Green. The Complaint contains the following relevant allegations regarding Drennan's relationship with Go Green: (i) "Drennan began working directly or indirectly for Go Green," ECF 1 ¶ 21; (ii) "[s]hortly after hiring Drennan and Salefski, Go Green began a[n] . . . effort to destroy [BOG's] business operations," *id.* ¶ 29; and (iii) "Go Green first directed Drennan and Salefski to solicit, recruit, and in some cases hire [BOG's] employees," *id.* ¶ 30. Taking these allegations as true, BOG has alleged that Go Green exercised the requisite control and authority over Drennan that typifies an agency relationship under Maryland law. *See Walton v. Mariner Health of Maryland, Inc.*, 391 Md. 643, 655, 894 A.2d 584, 591 (2006) (defining an agency relationship). Because the Complaint contains no allegations from which this Court could plausibly infer that Drennan acted independently, BOG's insistence that "[i]f Drennan was acting on behalf of another organization

11

or as an independent contractor, then the intra-corporate conspiracy doctrine does not apply and the conspiracy claim survives" is immaterial. ECF 30 at 19. Irrespective of whether these alternative relationships would suffice to exclude Drennan from the scope of the intracorporate conspiracy doctrine, BOG simply has not pleaded these facts in its Complaint. And while this Court is obliged to take all well-pleaded facts as true for purposes of this Motion, it may not infer the existence of facts that were not actually alleged.

BOG's second argument is more persuasive. In the absence of direct evidence, "[a] conspiracy may also 'be inferred from the things actually done.'" *Murdaugh*, 639 F.2d at 1075 (quoting *Overseas Motors, Inc. v. Imported Motors Ltd., Inc.*, 375 F. Supp. 499, 531 (E.D. Mich. 1974)). The Complaint alleges that several then-BOG employees misappropriated its documents, attempted to destroy the evidence thereof, and subsequently became affiliated with Go Green. *See, e.g.*, ECF 1 ¶ 43 ("Maddox misappropriated and forwarded [BOG] documents and attempted to delete the evidence of her misdeeds"); *id.* ¶ 48 ("Grainger-Smith used her [BOG] email to send to her personal email a swath of [BOG] documents . . . [and] deleted all materials in her [BOG] email account. As with the other employees w*ith whom Defendants conspired*, Grainger-Smith's employment with [BOG] was governed by a Non-Compete/Non-Solicitation Agreement.") (emphasis added). Read in the light most favorable to it, the Complaint contains sufficient factual allegations to raise a plausible inference that these individuals shared with Go Green a "unity of purpose or a common design," sufficient to form a conspiracy. *Murdaugh*, 639 F.2d at 1076. To the extent that these individuals were not yet agents or employees of Go Green, the intracorporate conspiracy does not apply.

Facts revealed during the course of discovery may, of course, foreclose BOG's claim; for instance, by showing that these individuals did not act in concert with Defendants, or establishing

12

that they were already agents of Go Green at the time of their conduct. At this juncture, however, BOG has adequately pleaded that Go Green unlawfully conspired with parties that are not named as defendants. *See In re Cotton Yarn Antitrust Litig.*, 505 F.3d 274, 284 (4th Cir. 2007) ("[A] plaintiff can prove the existence of a conspiracy in an action against just one of the members of the conspiracy."). Defendants' Motion to Dismiss Count VI will be denied.

### D. Breach of Contract (Count VII)

In Count VII, BOG alleges that Drennan and Salefski breached the Confidentiality Clauses, Employee Non-Solicitation Clauses, and Customer Non-Solicitation Clauses contained in their Separation Agreement and Employment Agreement, respectively. *See* ECF 1 ¶¶ 114-116. In its Motion, Defendants assert that Count VII must be dismissed in its entirety because all three restrictive covenants are facially overbroad and unenforceable as a matter of law. ECF 25 at 18. Defendants' argument as to each of these clauses fails.

The parties agree that the clauses at issue are restrictive covenants governed by Maryland law. Restrictive covenants are restraints on trade and must be reasonable to be valid. *Severn Mktg. Assocs., Inc. v. Doolin*, 2010 WL 3834994, at *3 (D. Md. Sept. 29, 2010) (citing *Ruhl v. Bartlett Tree Co.*, 245 Md. 118, 225 A.2d 288, 291 (Md. 1967)). Under Maryland law, a restrictive covenant is enforceable only if: (1) the employer has a legally protected interest; (2) the covenant is no wider in scope and duration than reasonably necessary; (3) it does not impose an undue hardship on the employee; and (4) does not violate public policy. *Occupational Health Centers of the Sw., P.A. v. Toney*, 2017 WL 1546430, at *11 (D. Md. Apr. 28, 2017); *see also Ruhl*, 245 Md. 118 at 291. In determining the enforceability of a restrictive covenant, courts begin "by assessing whether the covenant, as originally written, was reasonable on its face." *Deutsche Post Glob. Mail, Ltd. v. Conrad*, 116 F. App'x 435, 441 (4th Cir. 2004) (citing *Holloway v. Faw, Casson &*

*Co.*, 319 Md. 324, 572 A.2d 510, 518-19 (1990). If a covenant "meet[s] some threshold of facial reasonableness," *id.*; courts conduct a fact-intensive analysis of the enforceability of a clause under the circumstances of the particular case, *Severn*, 2010 WL 3834994, at *3. This as-applied analysis may consider several factors, including:

> whether the restriction is reasonable in area and duration, the hardships its enforcement might impose on the employee, the interests of the public, and whether the employee sought to be enjoined performs unique services, is soliciting customers, using trade secrets, assigned routes, customer lists, or is exploiting personal contacts established between the employee and his customers during his employment.

*Id.* (quoting *Millward v. Gerstung Int'l Sport Educ., Inc.*, 268 Md. 483, 302 A.2d 14, 16 (Md. 1973)). As described below, this Court concludes that the clauses at issue clear a threshold of facial reasonableness such that their enforceability will turn on the specific circumstances and facts of the case. As a motion to dismiss is not an appropriate forum to resolve factual contests, *Edwards*, 178 F.3d at 243, Defendants' arguments as to Count VII will be rejected.

Turning first to the Confidentiality Clauses, Defendants argue that: (1) the clauses are facially void insofar as they are broader than the Maryland Uniform Trade Secrets Act ("MUTSA"); and (2) to the extent the information is protected under the MUTSA, BOG's claim is preempted. ECF 25 at 23-24. Relevant caselaw does not support Defendants' "heads I win, tails you lose" logic. Although the MUTSA contains an express preemption provision, courts in this district have repeatedly held that MUTSA does not foreclose state law claims based on non-trade secret information. *Brightview Grp., LP v. Teeters*, 2021 WL 1238501, at *21 (D. Md. Mar. 29, 2021) (collecting cases); *see also Structural Pres. Sys., LLC v. Andrews*, 2013 WL 3820023, at *5 (D. Md. July 23, 2013) (plaintiff's claim for breach of a confidentiality provision was not preempted to the extent it was based on proprietary information not qualifying as a MUTSA trade secret). Moreover, previous courts have determined that issues regarding the enforceability of

confidentiality clauses that are broader than the MUTSA "present substantial factual questions" that may not be resolved through a motion to dismiss. *Structural Pres.*, 2013 WL 3820023, at *4. This Court similarly concludes that, on the face of the Complaint, BOG's claim for breach of Drennan's and Salefski's Confidentiality Clauses is not subject to dismissal on grounds of enforceability.

Next, this Court considers Defendants' facial challenges to the Employee and Customer Non-Solicitation Clauses in Drennan's and Salefski's agreements. The validity of these clauses, at least as provided in Drennan's Separation Agreement, presents a closer question. The Employee Non-Solicitation Clause in Drennan's agreement prohibits him from soliciting "any current *or future* Company employee to resign from the Company or to accept employment elsewhere" for a period of two years. ECF 1 ¶ 20(i) (emphasis added). Similarly, his Customer Non-Solicitation Clause extends to both "current [and] prospective Company customer[s]." *Id.* ¶ 20(ii). Defendants correctly observe that these clauses are not confined to only those customers or employees with whom Drennan or Salefski interacted during their tenure at BOG. Even so, "Maryland has enforced restrictive covenants barring solicitation of all of an employer's clients." *Ameritox, Ltd. v. Savelich*, 92 F. Supp. 3d 389, 399 (D. Md. 2015) (citing *Fowler v. Printers II, Inc.*, 89 Md. App. 448, 465, 598 A.2d 794, 802 (1991); *Tuttle v. Riggs–Warfield–Roloson, Inc.*, 251 Md. 45, 47, 246 A.2d 588, 589 (1968)). The ultimate enforceability of these clauses, therefore, is more appropriately addressed after the facts of the case have been further developed.

In sum, none of the restrictive covenants will be held unenforceable on its face. Defendants may, of course, challenge the validity of such clauses upon the development of a fuller evidentiary record. At this juncture, however, their Motion to Dismiss Count VII will be denied.

### E. Jurisdiction over State Law Claims

Finally, Defendants argue that "[t]o the extent the Court finds Counts I and III asserting federal law claims fail to state a claim, the Court should dismiss any state law claim not otherwise dismissed by declining to exercise 28 U.S.C. § 1367 supplemental jurisdiction."  ECF 25 at 25. Although federal courts may exercise supplemental jurisdiction over state law claims even after dismissing all federal claims, *Hall v. Greystar Mgmt. Servs., L.P.*, 179 F. Supp. 3d 534, 537 (D. Md. 2016), that inquiry is not before this Court in light of its determination that BOG has adequately pleaded a claim under the DTSA. This Court's continued exercise of supplemental jurisdiction over state law claims is entirely appropriate.  *See* 28 U.S.C. § 1367; *Axel Johnson, Inc. v. Carroll Carolina Oil Co.*, 145 F.3d 660, 662 (4th Cir. 1998) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)).

### IV. CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss, ECF 25, is GRANTED WITHOUT PREJUDICE as to Count III and DENIED as to the remaining claims.  A separate Order follows.


Dated: April 18, 2022                              /s/
                                             Stephanie A. Gallagher
                                             United States District Judge