**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

|                                                        |     |                              |
| ------------------------------------------------------ | --- | ---------------------------- |
|                                                        | *   |                              |
| **BLADES OF GREEN, INC.**                              | *   |                              |
|                                                        | *   |                              |
| **Plaintiff/Counter-Defendant,**                       | *   |                              |
|                                                        | *   |                              |
| **v.**                                                 | *   | **Civil Case No.: SAG-22-00176** |
|                                                        | *   |                              |
| **GO GREEN LAWN AND PEST, LLC,** *et al.,*             | *   |                              |
|                                                        | *   |                              |
| **Defendants/Counter-Plaintiff.**                      | *   |                              |
|                                                        | *   |                              |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MEMORANDUM OPINION

Counter-Plaintiffs Go Green Lawn and Pest, LLC ("Go Green") and Andrews Lawn and Landscaping LLC ("ALL") filed a Second Amended Counterclaim and Third-Party Complaint ("SAC") against Counter-Defendant Blades of Green, Inc. ("BOG") and two of its employees, Brad Leahy and Danielle Collinson (collectively "BOG Counter-Defendants"[1]), seeking redress for alleged misappropriation of trade secrets, tortious interference with business relations, and a violation of the Computer Fraud and Abuse Act ("CFAA"). ECF 73; ECF 74. The BOG Counter-Defendants have filed a Motion to Dismiss the Counterclaim ("Motion"), ECF 75. The issues have been fully briefed, ECF 75, 77, 85, and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2021). For the following reasons, the BOG Counter-Defendants' Motion will be granted, although the counterclaims and third-party claims will be dismissed without prejudice.

---

[1] Technically, Leahy and Collinson are not counter-defendants but third-party defendants, because they were not part of the original complaint BOG filed. Nevertheless, this Court will use "BOG Counter-Defendants" as a collective reference, to be less wordy.

## I.    BACKGROUND

The following facts are largely derived from the SAC, ECF 73, and are taken as true for purposes of evaluating the BOG Counter-Defendants' Motion. As background, as this Court has summarized in other filings in this case, BOG is a Maryland corporation offering lawn care and pest control to homeowners in Maryland, the District of Columbia, and Virginia. ECF 1 ¶¶ 1, 9. Go Green and ALL are Pennsylvania corporations that offer lawn care and pest control services in Pennsylvania and Northern Delaware, and they are seeking to expand their businesses into Maryland. *Id.* ¶¶ 2–4, 13–15. Tyler Salefski began working for BOG in September, 2017. *Id.* ¶ 23. BOG terminated Salefski in April, 2021, and he subsequently became employed by Counter-Plaintiff Go Green. *Id.* ¶¶ 27–28.

On or about January 4, 2022, a former Go Green employee, Ashley Lentz, called Danielle Collinson, a BOG employee, to ask to tour the BOG facility and learn about BOG's marketing strategies. ECF 73 ¶¶ 10–12. On January 13, 2022, Collinson emailed Lentz about engaging in a follow-up discussion. *Id.* ¶ 13. Lentz called Collinson and spoke with Collinson and Leahy by telephone that same day. *Id.* ¶ 14. During the call, Leahy and Collinson questioned Lentz about Go Green. *Id.* ¶ 15. Lentz agreed to go to BOG's office on January 14, 2022. *Id.*

On the morning of January 14, 2022, Lentz met with Leahy and Collinson at BOG's offices. *Id.* ¶ 16. They questioned her about her length and type of employment at Go Green and her opinions of Go Green and its employees. *Id.* ¶ 17. They asked her to review BOG's "playbook" to see whether any portions looked familiar to her. *Id.* ¶ 18. During the visit, Leahy and Collinson requested that Lentz "log in to Tyler Salefski's Go Green work email via Microsoft Outlook's app using her knowledge as a former Go Green employee of its email system and Mr. Salefski's log in

information." *Id.* ¶ 19. Neither Salefski nor anyone at Go Green authorized Lentz, Leahy, or Collinson to access Salefski's email. *Id.*

Once the email account was accessed, Collinson and Leahy directed Lentz to search the names of several BOG employees to see whether they were referenced in Salefski's emails. *Id.* ¶ 21. Lentz forwarded to Collinson the information she intercepted from Salefski's email, including but not limited to "a copy of Go Green's Maryland Customer List and employee pay information."[2] *Id.* ¶¶ 22, 23. After Lentz left BOG's offices, Collinson texted Lentz to say, "if there is anything else you think we need to save out of the email, we should do it ASAP." *Id.* ¶ 24. Lentz reported, "As soon as I am home I'll check one last time." *Id.*

On an unspecified occasion, Lentz texted "Brad" and "Russell"[3] and said "I'm thinking we should not use any information from the email, like the copies of the employees pay for go green or any of that information. Basically nothing that says Tyler or Daves [sic] email." *Id.* ¶ 27.

## II.   STANDARD OF REVIEW

Under Rule 12(b)(6), a defendant may test the legal sufficiency of a complaint by way of a motion to dismiss. *See In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom.*, *McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by

---

[2] This Court notes that there is no reference in the factual allegations in the SAC suggesting that anyone accessed ALL's computer system or emails and there is no specific assertion that Lentz viewed or shared any ALL-related items. In the later Counts in the SAC, though, reference is made to "Go Green's and ALL's" employee information, consumer lists and other confidential business information. *See, e.g.*, ECF 73 ¶¶ 30, 36, 44. Such allegations, unsupported by any factual assertions establishing that any of ALL's information was accessed or taken, do not suffice to establish a plausible claim on behalf of ALL.

[3] Go Green alleges that "Russell" is BOG's attorney, Russell Berger. ECF 73 ¶ 23.

a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Federal Rule of Civil Procedure 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

To survive a motion under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for all civil actions[.]") (quotation omitted); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). However, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Further, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556.

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Semenova v. MTA*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011). However, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Courts generally do not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defense" through a Rule 12(b)(6) motion. *Edwards*, 178 F.3d at 243 (quoting *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). However, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan*, 553 F.3d 334, 336 (4th Cir. 2009). "This principle only applies, however, if all facts necessary to the affirmative defense 'clearly appear[] *on the face of the complaint*.'" *Id.* (quoting *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993) (emphasis and alterations in *Goodman*)).

### III.   DISCUSSION

#### A.  Trade Secrets Claims (Counts II and III)

In Counts II and III, Go Green and ALL allege that BOG Counter-Defendants misappropriated their trade secrets in violation of the Pennsylvania Uniform Trade Secrets Act ("PUTSA"), 12 Pa. Cons. Stat. 5301 *et seq.* and the Federal Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1831 *et seq.*

"The concept of trade secret is at best a nebulous one and has been variously defined by case and text authority." *Van Products Company v. General Welding and Fabricating Company*, 419 Pa. 248, 258, 213 A.2d 769, 775 (Pa.1965). Courts weigh multiple factors to determine whether information qualifies as a trade secret, including (1) the extent to which the information is known outside the owner's business, (2) the extent to which the information is widely known within the owner's business, (3) the measures taken to guard the secrecy of the information, (4) the value of the information to the owner and to his competitors, (5) the effort or money expended by the owner to develop the information, and (6) the ability of others to acquire or duplicate the information through other means. *See Mountbatten Surety Co., Inc. v. AFNY, Inc.*, 2000 WL 375259 (E.D. Pa. 2000); *Tyson Metal Prods., Inc. v. McCann*, 376 Pa. Super. 461, 465, 546 A.2d 119, 121 (Pa. Super. 1998).

The factual allegations in the SAC identify only two items misappropriated: "Go Green's Maryland Customer List and employee pay information." ECF 73 ¶ 22. Lentz's email also makes reference to "copies of the employees pay for go green." *Id.* ¶ 27. Considering those items under the standards above, they do not appear to warrant protection as trade secrets. *See W. Chester Design Build, LLC v. Moses*, Civ. No. 22-1911, 2022 WL 15524950, at *5 (E.D. Pa. Oct. 27, 2022) ("[i]tems like customer lists do not automatically constitute confidential information[.]"). By

definition, the fact that someone is a customer and the fact that someone is an employee is known outside the employer's business (and is widely known within the business). Although the precise information contained in the employee pay-related records is unclear, the information is clearly known to the employee in question, who is free to share it at will. There is no assertion that Go Green spent any money to compile its customer list or its employee pay records, both of which are simply generated in the course of doing business. *See id.*; *see also Fidelity Fund, Inc. v. Di Santo*, 347 Pa. Super. 112, 121, 500 A.2d 431, 436 (1985) (expressing agreement with the statement, "Customer lists are the very periphery of the law of unfair competition, because legal protection does not provide incentive to compile lists, because they are developed in the normal course of business anyway."). Finally, the SAC alleges no facts suggesting that Go Green undertook reasonable efforts to maintain these records' secrecy. *Cf. Houser v. Feldman*, 569 F. Supp. 3d 216, 230 (E.D. Pa. 2021) ("[A] complaint sufficiently alleges 'reasonable measures' to maintain secrecy of a trade secret where the facts alleged support an inference that access was limited such that it would be difficult to acquire such trade secrets."). The fact that the information appears to have been retained in an email account, where the login information was left in the possession of former employees, suggests to the contrary. And the SAC does not allege facts establishing how either the customer list or employee pay information derives actual and potential independent economic value from not being generally known. *See Asset Plan. Servs., LTD v. Halvorsen*, Civ. No. 21-2021, 2022 WL 1104060, at *7 (E.D. Pa. Apr. 13, 2022) (requiring a showing that the party asserting trade secret protection "obtain[ed] an economic benefit, competitive advantage, or other commercial value" from the trade secret in question). Finally, as noted above, there are no specific factual allegations suggesting that any of ALL's information was taken. As pled, then, the SAC

does not state a plausible claim for violation of either state or federal trade secret laws, and Counts II and III will be dismissed.

**B.  Tortious Interference with Business Relations (Count IV)**

Go Green's and ALL's claim for tortious interference with business relations suffers a similar fate. The elements for a claim in Pennsylvania for tortious interference with business relations include:

> (1) the existence of a contractual relationship between the plaintiff and a third party;
> (2) purposeful action on the part of the defendant intended to harm the relationship;
> (3) the absence of privilege or justification on the part of the defendant; and
> (4) actual damages resulting from the defendant's conduct.

*Hillis Adjustment Agency, Inc. v. Graham Co.*, 911 A.2d 1008, 1012 (Pa. Super. 2006), *appeal denied*, 934 A.2d 1278 (Pa. 2007) (citations omitted)). Here, Go Green and ALL have not alleged that the acts of BOG and its employees were calculated to cause damage to their businesses or that any actual damages resulted. In opposition, Go Green "presume[es]" that BOG accessed the information "to use against Go Green and ALL in the underlying litigation or for some other illicit means." ECF 77 at 9. Even if the goal was to bring litigation, however, this does not infer an intent to harm Go Green and ALL's business relations. In fact, ALL has not alleged that any of its information was taken, and Go Green has not alleged that BOG, Leahy, or Collison took any actions with the information obtained from Lentz or used it in any way. In the absence of any such factual allegations, Count IV is also subject to dismissal.

**C.  CFAA**

The final substantive count is violation of the Computer Fraud and Abuse Act ("CFAA"), which prohibits "access[ing] a computer without authorization" or "access[ing] a computer with authorization . . . to use such access to obtain or alter information in the computer that the accesser is not entitled so to obtain or alter." 18 U.S.C. § 1030(a), (e)(6) (2006). The parties' dispute centers

on the fact that, as alleged in the SAC, Go Green's email system was accessed physically by Lentz, a former Go Green employee, not by the BOG employees, Leahy and Collison. The critical issue, then, is whether Leahy and Collison's actions can be interpreted as "accessing" under CFAA.

While this precise question appears to be one of first impression in this circuit, other relevant precedent is informative. In *Van Buren v. United States*, 141 S. Ct. 1648, 1661 (2021), the Supreme Court considered a case in which a police officer, Van Buren, used his valid access to law enforcement databases to provide license plate information to a private citizen in exchange for payment. The government prosecuted Van Buren for a CFAA violation, under the theory that his conduct exceeded his authorized access to the law enforcement computer database. *Id.* The *Van Buren* Court explained, "In the computing context, 'access' references the act of entering a computer 'system itself' or a particular 'part of a computer system,' such as files, folders, or databases." *Id.* at 1657. Ultimately, the Supreme Court agreed with the defense's narrow scope of the CFAA, simply focusing on the validity of the defendant's access to a database in the first place and not on the subsequent misuse of the information he obtained. *Id.* Because Van Buren had lawful authorization to access the law enforcement databases and the license plate records, he did not hack the databases unlawfully despite how he intended to use the information. *Id.* And his subsequent misuse of the information he obtained did not amount to a CFAA violation.

Similarly, in *United States v. Nosal*, 676 F.3d 854 (9th Cir. 2011), the Ninth Circuit overturned a CFAA conviction of David Nosal, a former employee who had asked his former coworkers to obtain information from their employer's computer system and send it to him. *Id.* at 856. The Ninth Circuit ruled that CFAA did not allow liability against Nosal, who did not physically access the computers, but simply convinced someone else to do it for him. *Id.* at 856–57 (limiting the application of CFAA to "what is colloquially known as 'hacking'").

9

While other courts have suggested that CFAA liability can be premised on "indirect access," meaning one person asking another to access a computer database unlawfully, this Court is unpersuaded. The Supreme Court's ruling in *Van Buren* evidences a preference for a narrow construction of CFAA focused on the actual entry into a computer system. Allowing someone who "directs, encourages, or induces" someone else to access a computer to be liable seems to criminalize the use of the accessed information, not the act of accessing the computer database itself. *Cf. Brand Energy & Infrastructure Servs., Inc. v. Irex Contracting Grp.*, No. CV 16-2499, 2017 WL 1105648, at *15 (E.D. Pa. Mar. 24, 2017). That concept runs contrary to *Van Buren.*

However, this Court is also unpersuaded that only the person physically pushing the buttons to enter the searches can be found to have "accessed" computer information. This Court can conceive of other circumstances in which more than one person might access a computer database, even if only one person physically touches the keyboard.

As drafted, the SAC fails to state a plausible CFAA claim. The forwarding of emails by Lentz to BOG employees, on its own, is insufficient to allege that BOG accessed Go Green's email system in violation of CFAA. Nonetheless, depending on BOG's interaction with the email account, a violation may still have occurred. However, the SAC contains very sparse information about what actually happened at BOG when Lentz accessed Go Green's email system. The allegations do not state where Lentz was when she accessed the information, who she was with, what device she was looking at, whether that device remained in her physical possession throughout the encounter, or what anyone else could see. Absent that information, this Court is

unable to find that Go Green has pled a plausible CFAA claim. The claim, like the others, will therefore be dismissed without prejudice.[4]

## IV.   CONCLUSION

For the reasons set forth above, the BOG Counter-Defendants' Motion to Dismiss, ECF 75, is GRANTED and the counterclaims/third-party claims in the SAC are dismissed without prejudice. Any motion for leave to amend those claims must be filed within fourteen days, or the dismissal will convert to dismissal with prejudice. A separate Order follows.

Dated: August 16, 2023                                    _____/s/_____
                                                                    Stephanie A. Gallagher
                                                                    United States District Judge

---

[4] Count One seeks a permanent injunction. Because all of the other substantive counts in the SAC are dismissed, Count One must be dismissed as well.